IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

VIRGIL W. HANEY, )
 )
               Plaintiff, )
 )
v. ) Case No. CIV-07-199-KEW
 )
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
 )
               Defendant. )

## OPINION AND ORDER

Plaintiff Virgil W. Haney, (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED AND REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C.

1

§423(d)(2)(A).  Social Security regulations implement a five-step sequential process to evaluate a disability claim.  *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:  first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied.  Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight."  Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform.  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work.  *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

**Claimant's Background**

Claimant was born on August 13, 1955, and was 50 years old at the time of the hearing before the ALJ. He has a sixth grade education. Claimant has worked as a trimmer/carpenter and butcher. Claimant alleges an inability to work beginning August 13, 2005, due to back pain, shortness of breath, hearing loss, and bilateral knee pain.

**Procedural Background**

On June 9, 2004, claimant filed protectively for supplemental security income under Title XVI ( 42 U.S.C. § 1481, et. seq.). Claimant's application was denied initially and upon reconsideration. A hearing before ALJ Charles Headrick was held on July 5, 2006, in Sallisaw, Oklahoma. By decision dated November 8, 2006, the ALJ found that Claimant was not disabled at any time through the date of the decision. On May 22 2007, the Appeals Council denied review of the ALJ's findings. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant's medical conditions were severe, they did not meet a Listing and retained the residual function capacity ("RFC") to perform a limited range of light work. Although he was unable to perform his past relevant work, the Medical-Vocational Guidelines ("GRIDS") and a vocational expert ("VE") were used to determine that significant numbers of jobs were available in the national and regional economies that he could perform.

**Review**

Claimant asserts the ALJ committed error requiring reversal in failing to: (1) properly

develop the record related to hearing impairments and musculoskeletal impairments; (2) make a proper credibility determination; and (3) submit appropriate hypothetical questions to the VE that related all Claimant's impairments with precision.

Claimant argues the ALJ failed to properly develop the record by failing to order a consultative examination for the purpose of obtaining additional evidence regarding the extent of his hearing impairment and muskuloskeletal impairments. Medical records from October 24, 2000 through January 16, 2002 document Claimant's treatment with E. D. Scott, M.D. for "recurrent flare-ups of lower back problems." (Tr. 106). Historically, Claimant stated that he "has had a flare-up of pain and stiffness in his lower back, which radiates into his buttocks and upper thighs bilaterally. He has not had any numbness, tingling, paresthesis, or other neurologic symptoms. Id. On examination, Dr. Scott noted Claimant "has stiffness and lack of mobility of the lumbar spine and straight leg raising to 90 degrees bilaterally with negative Lasegue's sign. Neurovascular function is normal. He has paraspinal muscle stiffness and tenderness." Id. On November 1, 2000, Dr. Scott commented that lumbar x-rays taken in February, 1999 "were fairly normal but did show some lumbar disc degeneration and slight spondylolisthesis at L5-S1." (Tr. 105). An MRI was recommended after a conversation in which Claimant complained of abnormal sensation in both legs including intermittent numbness and stabbing pain. Id. After reviewing the results of the MRI which showed "disk degeneration of L5-S1 and other degenerative changes but no significant disk protrusion or spinal stenosis." Dr. Scott opined that Claimant "is not a good surgical candidate and I do not feel that this would help him." (Tr. 104). On January 16, 2002, Claimant reported "ongoing low back pain and spasms. He has significant lumbar disk degeneration." Claimant did not volunteer any specific neurologic symptoms. He

4

was able to sit well and move well on examination. (Tr. 103).

The record shows an audiological evaluation was performed on November 20, 2001 by Mary Finerty. She opined Claimant suffered from severe to profound mixed hearing loss in his right ear and moderate to severe mixed hearing loss in the left ear. She recommended a medical consult. (Tr. 134).

The record also shows that a lumbar spine MRI was performed on November 8, 2000 by Shane McAlister, M.D. Dr. McAlister found: (1) severe degenerative disc disease at L5-S1 with small to moderate size midline disc protrusion that does not abutt (sic) or compress the nerve roots and should not cause radicular symptoms. (2) Discogenic changes in the vertebral end plates with moderate to severe degenerative disc disease at L5-S1. (3) No other demonstration of transligamentous HNP, extruded disc fragment, degenerative disc disease or canal stenosis. (4) Moderate degenerative facet arthopathy at all levels but no lateral recess stenosis. (5) The conus medullaris is not enlarged. There is no pathologic marrow signal intensity to suggest metastatic disease. (Tr. 101-102).

A consultative evaluation was performed by Ravinder R. Kurella, M.D. on October 2, 2004. Dr. Kurella found Claimant had disc degeneration at L5-S1 without any disc protrusion or spinal stenosis. He found significant range of motion of flexion and extension at 10 degrees. Claimant was found to have full range of motion of bilateral hop joints associated with pain, full range of motion of the knee and ankle joint, significant range of motion of the left should and full range of motion of the right shoulder associated with pain. Claimant complained of bilateral hip pain. Dr. Kurella observed that Claimant's gait resulted in stooping forward around 20 degrees. Upon squatting, Claimant's back pain was relieved. His gait was slow without any risk

5

of a fall. Claimant's toe walking was somewhat weak secondary to hip pain. Heel walking was weak secondary to hip pain and back pain. Straight leg raising was negative both sitting and lying down. Dorsiflexion of the great toe and dorsi-iversion of the foot were normal on both sides. (Tr. 107-109).

In his decision, the ALJ found Claimant suffered from severe impairments due to disc degeneration at L5-S1 and hearing loss. Within the discussion of medical evidence considered, the ALJ listed the audiological evaluation by Ms. Finerty and testing results showing moderate to severe bilateral hearing loss. (Tr. 20). The medical records from Dr. Scott were included in the ALJ's discussion. The ALJ noted the MRI performed by Dr. McAlister and his findings. (Tr. 19-20). The ALJ discussed the consultative evaluation by Dr. Kurella and his range of motion findings. (Tr. 20-21). In his Residual Functional Capacity ("RFC") assessment, the ALJ found Claimant retained the work capacity to "occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8 hour workday, sit about 6 hours in an 8 hour workday, and push and pull on an unlimited basis. He can occasionally crouch and crawl, but is restricted in range of motion of flexion and extension is restricted at -10 degrees. He is also restricted in range of motion of his left shoulder and is slightly limited in his ability to heel and toe walk. Additionally, the claimant is limited due to bilateral hearing loss." (Tr. 19).

Initially, it should be noted that the Secretary has broad latitude in the ordering of consultative examinations. Diaz v. Secretary of Health & Human Services, 898 F.2d 774, 778 (10th Cir. 1990). A consultative examination is only required where there is a direct conflict in the medical evidence requiring resolution, see 20 C.F.R. § 404.1519a(b)(4) or where the medical

evidence in the record is inconclusive. Thompson v. Sullivan, 987 F.2d 1482, 1491 (10th Cir. 1993). Additionally, a consultative examination may be required where additional tests are required to explain a diagnosis already contained in the record. Hawkins v. Chater, 113 F.3d 1167 (10th Cir. 1997).

Here, Claimant has failed to present sufficient evidence to show that additional tests were required to explain the diagnosis of degenerative disc disease and hearing loss. Substantial evidence supports the ALJ's inclusion of severe impairments for hearing loss and degenerative disc disease.

**Credibility Analysis**

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly with the province of the finder of fact, " and, as such will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include, (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

7

Soc. Sec. R. 96-7p; WL 374186, 3.

Claimant contends the ALJ erred by basing his credibility analysis on two erroneous findings. First, Claimant contends the ALJ erroneously concluded the objective medical evidence did not support the claims asserted. Secondly, Claimant argues the ALJ improperly discounted his credibility based on a lack of medical treatment.

The ALJ found Claimant's statements concerning his impairments and their impact on his ability to work was "not entirely credible in light of the claimant's own description of his activities and life style, the degree of medical treatment required, discrepancies between the claimant's assertions and information contained in the documentary reports, and the findings made on examination." (Tr. 21). The ALJ noted the MRI which showed disc protrusion at L5-S1 but should cause not radicular symptoms. Id. The ALJ also commented on Claimant's failure to receive medical treatment on a consistent basis as an inconsistency with a chronic or worsening medical condition. Id. Although degenerative disc disease was acknowledged to be present, the physical findings were found not to corroborate or correlate with the subjective complaints. (Tr. 21-22). Claimant's failure to take medications and follow recommended medical treatment was also listed as a factor in his credibility analysis. The ALJ noted the absence of any opinions from treating or examining physician documenting limitations greater than those determined in the decision. Id.

Although the ALJ is not required to perform a formalistic factor-by-factor recitation of the evidence, some evidence must be set forth stating the specific evidence relied upon in evaluating Claimant credibility. Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Here, the ALJ provided an adequate link between his credibility finding and the evidence, his findings are

supported by substantial evidence.

## Vocational Testimony

Claimant contends the ALJ erred by failing to formulate hypothetical questions posed to the vocational expert ("VE") with the precision required to include all of his physical limitations. Here, the ALJ requested the VE to assume the hypothetical capacity of an individual with limitations consistent with the RFC assessment from Dr. Kurella and the audiological examination performed by Mary Finerty. (Tr. 175-176). Claimant argues that it is impossible from the record to determine what interpretation the VE may have given to Dr. Kurella's findings and whether this interpretation matched the restriction in the RFC. Particular concern was specified by the Claimant with regard to restrictions upon the use of the left shoulder.

"Testimony elicited by hypothetical question that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision." Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991)(quotation omitted). The hypothetical questions submitted to the VE in this case failed to articulate the extent of the limitations included within the hypothetical. Upon remand, the ALJ is directed to specify the extent of the limitations in terms of the frequency of the ability to reach.

In the alternative, Claimant argues that the jobs listed by the VE, and used by the ALJ to support the denial of benefits was improper because they were inconsistent with the Dictionary of Occupational Titles ("DOT"). Claimant contends the jobs listed by the VE were inconsistent with a limited ability to perform frequent or constant reaching.

When testimony from a VE "is either in conflict with the DOT, or creates a conflict in the

9

evidence based on the DOT, the ALJ may, nonetheless, rely upon the vocational expert's testimony if the record reflects a substantial reason for deviating from the DOT. <u>Haddock v. Apfel</u>, 196 F.3d 1084 (10th Cir. 1999). As previously discussed, the ALJ erred by failing to precisely describe the reaching ability of a hypothetical individual within the questioning of the VE. Additionally, the ALJ failed to discuss any deviation with the DOT and the reaching ability required for the jobs listed by the VE. Thus, the ALJ's step five determination is not supported by substantial evidence.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

DATED this 17th day of July, 2008.

_____
UNITED STATES MAGISTRATE JUDGE